UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brady Paul West,                                                    Civil No. 11-287 (DWF/AJB)

          Plaintiff,

v.                                                                               **MEMORANDUM**
                                                                                                       **OPINION AND ORDER**

Allina Health System,
d/b/a United Hospital,

          Defendant.

_____

Adam A. Gillette, Esq., and Douglas L. Elsass, Esq., Fruth, Jamison & Elsass, counsel for Plaintiff.

Randi J. Winter, Esq., and Sara Gullickson McGrane, Esq., Felhaber Larson Fenlon & Vogt, PA, counsel for Defendant.

_____

**INTRODUCTION**

      This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 25). For the reasons set forth below, the Court grants Defendant's motion.

**BACKGROUND**

      Defendant Allina Health System, d/b/a United Hospital ("Allina") hired Plaintiff Brady Paul West ("West") as a Registered Nurse to begin work on November 18, 2002 at United Hospital. (Doc. No. 31, Gillette Aff. ¶ 5, Ex. 4.) On June 28, 2005, West transferred to Abbott Northwestern Hospital. (Gillette Aff. ¶ 2, Ex. 1 ("West Dep.") at 96:4-22; Doc. No. 28, Ex. 5.) While working at Abbott Northwestern, on June 1, 2006,

West filed a complaint against a co-worker for creating a hostile workplace by allegedly making inappropriate comments and refusing to speak to West. (West Dep. at 109:12-110:5; Doc. No. 28, Exs. 9-10.) West's co-workers also complained that he was difficult to work with and had a temper. (West Dep. at 113:21-114:7.) West received a written warning for "becom[ing] angry easily as noted by 3 different co-workers," for behavior that included speaking loudly, cursing, leaning forward with clenched fists, visibly shaking, and berating others. (Doc. No. 28, Ex. 33.)

On January 15, 2007, West transferred back to United Hospital to work in the Critical Care Unit. (West Dep. at 120:18-121:6; Doc. No. 28, Ex. 12.) After his transfer, West reported a co-worker to Human Resources for alleged discriminatory conduct, including a comment that his underwear was showing. (Doc. No. 28, Ex. 13.) Allina investigated the complaint and "was unable to establish merit." (Doc. No. 28, Exs. 14-15.) During his time in the Critical Care Unit, West participated in two disciplinary conferences and received two warnings regarding his workplace performance; management addressed his inability to maintain composure under stress, his failure to properly care for patients, and his "unacceptable behavior" (specifically issues with anger), before West chose to "pursue other opportunities outside of Critical Care." (Doc. No. 28, Exs. 18-20.) West transferred from Critical Care to the Float Pool[1] at United Hospital on April 25, 2007.[2] (West Dep. at 128:6-25; Gillette Aff. ¶ 6, Ex. 5.)

---

[1]  The Float Pool provides additional staffing to departments that are short-staffed due to absences and to those which temporarily need additional help. (Gillette Aff. ¶ 4,
(Footnote Continued on Next Page)

In the Float Pool, West began working primarily in the Telemetry Department until, again, fellow staff members voiced complaints about his behavior. (Milligan Dep. at 16:14-21.) Specifically, in July 2008, his response to a patient assignment change was described by a co-worker as "threatening" and "scary." (Doc. No. 28, Ex. 23.) In August 2008, West became upset during his shift and "closed a drawer more firmly than was necessary," startling two nurses—an act that resulted in disciplinary action. (Am. Compl. ¶¶ 10-11; Doc. No. 28, Exs. 23-24.) Mary Milligan ("Milligan"), West's supervisor, counseled him on avoiding intimidating behaviors, suggested sitting rather than leaning over others, and advised him of the availability of the Employee Assistance Program and employee mediation. (Milligan Dep. at 36:6-19, 37:6-21.)

In September 2008, West complained to Minnesota state congressman Joe Atkins, the Minnesota Nurses Association, and the Minnesota and St. Paul Departments of Human Rights that Allina discriminated against him on the basis of his sex, age, and/or height. (Doc. No. 28, Ex. 25 at 1, 3-4; Gillette Aff. ¶ 10, Ex. 9.) After receiving notice of the Charge of Discrimination through the Departments of Human Rights, Allina conducted an investigation and was unable to substantiate the allegations. (Gillette Aff.

---

(Footnote Continued From Previous Page)
Ex. 3 ("Milligan Dep.") at 8:9-21.) Assignments vary daily and are given to staff shortly before a shift begins. (*Id.* at 10:1-15.)

[2]   Allina maintains that West's multiple departmental transfers were the result of his behavioral issues. (*See* Doc. No. 27 at 28.)

¶¶ 3, 11, Ex. 2 ("Gran Dep.") at 12:19-13:3, Ex. 10.) The Departments of Human Rights then issued a "no probable cause" finding. (West Dep. 136:14-16.)

On February 17, 2009, West complained that Allina policy was not followed after a 15-year-old female patient suffering from toxic shock syndrome was transferred (at the patient's request) from West's care to the care of a female nurse. (Doc. No. 28, Ex. 28; Gillette Aff. ¶ 14, Ex. 13.) Allina's non-discrimination policy states that the assigned nurse must agree to the transfer prior to reassignment.[3] (Doc. No. 28, Ex. 28; Gillette Aff. ¶ 14, Ex. 13.) In addition, West complained that the charge nurse made a comment that she "would not want a male nurse to care for her if she were that patient." (Doc. No. 28, Ex. 28; Gillette Aff. ¶ 14, Ex. 13.) Following its investigation, Allina concluded that the policy had been followed and there had been no discrimination. (Gran Dep. at 22:22-23:10.)

In March 2009, West helped a co-worker submit a Patient Visitor Safety Report regarding an incident that occurred with another nurse, Vicki Shenton. (Gillette Aff. ¶ 19, Ex. 18.) After learning of West's involvement, Shenton spoke with West privately. (*Id.*) Shenton and West have differing accounts of what occurred during the interaction, which resulted in both individuals filing complaints. (*Id.*; Gillette Aff. ¶ 23, Ex. 22.) West complained that Shenton attempted to intimidate him. (Gillette Aff. ¶ 20, Ex. 19 at 1.) Shenton complained that West threatened her, saying "I'm bringing you down" and

---

[3] The policy is not part of the record currently before the Court.

clenching his fists. (Doc. No. 28, Ex. 51.) In response to West's complaint, Milligan e-mailed Jennifer Gran, stating: "When do we say enough is enough!!" (Gillette Aff. ¶ 21, Ex. 20.) Ultimately, after interviewing the parties involved, Allina concluded that it could not substantiate West's allegations against Shenton. (Gran Dep. at 67:6-9.)

In April 2009, West was again reported by a co-worker for having an angry confrontation during his shift. (Doc. No. 28, Ex. 45.) The co-worker described West as standing very close, shaking, and visibly angry. (*Id.* at 2.) Allina again investigated by interviewing the parties involved and other nurses on the shift. (Doc. No. 28, Ex. 45.) On May 4, 2009, Allina terminated West's employment for his continued violation of Allina's Violence-Free Workplace and Respectful Workplace policies.[4] (Gillette Aff. ¶ 29, Ex. 28.) Specifically, the termination notice states the following:

> This is to advise you that your employment with United Hospital is terminated effective immediately. Your termination is the result of your continued violation of the Allina Hospitals & Clinics Violence Free Workplace [P]olicy and Respectful Workplace Policy. Specifically, on March 7, 2009 during a conversation with another employee you acted in an intimidating and threatening manner towards that employee causing the employee to be fearful of some type of harm. Again on April 30, 2009 you had another encounter with a different employee where your actions toward that employee were of an intimidating and threatening manner causing that employee to be fearful of some type of harm from you. You have been previously warned about your intimidating and threatening actions towards other employees. On 4-2-07 you were given a written warning concerning your behavior. Between that date and April 30, 2009 you have had several conversations with your manager regarding your behavior. Your actions of

---

[4] The Violence-Free Workplace Policy prohibits "threatening or intimidating conduct." (Gillette Aff. ¶ 26, Ex. 25.) The Respectful Workplace Policy prohibits hostile or intimidating interactions. (Gillette Aff. ¶ 8, Ex. 7.)

5

> March 9, 2009 [sic] and April 30, 2009 are so egregious that each incident, standing alone, [j]ustifies your immediate discharge.

(*Id.*)

West initially commenced this action in state court on January 13, 2011. (Doc. No. 1, Ex. 1 ("Compl.") at 2.) On February 3, 2011, Allina removed the action to this Court. (Doc. No. 1.) On May 23, 2011, West filed an Amended Complaint, in which he asserts the following three counts against Allina: (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) sex discrimination in violation of the Minnesota Human Rights Act ("MHRA"); and (3) reprisal discrimination in violation of the MHRA. (Doc. No. 13, Am. Compl. ¶¶ 25-39.) Allina now moves for summary judgment. (Doc. No. 25.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.   Motion for Summary Judgment

The parties agree that the burden-shifting framework promulgated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), applies to determine whether Allina is entitled to summary judgment with respect to West's claims. *See Grifith v. City of Des Moines,* 387 F.3d 733, 736-37 (8th Cir. 2004) (claims under Title VII are analyzed under *McDonnell Douglas*); *Eliserio v. United Steelworkers of Am. Local 310,* 398 F.3d 1071, 1078 (8th Cir. 2005) *(McDonnell Douglas* applied to retaliation claims); *LaCroix v. Sears, Roebuck, & Co.,* 240 F.3d 688, 693 (8th Cir. 2001); *Johnson v. Baptist Med. Ctr.,* 97 F.3d 1070, 1072 (8th Cir. 1996). Under the *McDonnell Douglas* framework, if West is able to establish a prima facie case of discrimination, the burden shifts to Allina to produce a legitimate, non-discriminatory reason for the adverse employment action. *Johnson,* 97 F.3d at 1072. If Allina is able to articulate such a reason, the burden then

shifts back to West to show that the proffered reason is merely a pretext for discrimination. *Id.*

      A.      **Sex Discrimination Claims**

West asserts that Allina discriminated against him on the basis of his gender in violation of Title VII and the MHRA.

To establish a prima facie case of gender discrimination, a plaintiff must show that he: (1) is a member of a protected class; (2) was qualified for his job; (3) suffered an adverse employment action; and (4) alleged facts that give rise to an inference of gender discrimination. *Norman v. Union Pacific R.R. Co.*, 606 F.3d 455, 460-61 (8th Cir. 2010) (citing *McGinnis v. Union Pac. R.R.,* 496 F.3d 868, 874 (8th Cir. 2007)). The fourth element may be met if a plaintiff demonstrates that he was treated differently from similarly situated female employees. *See Thomas v. Corwin*, 483 F.3d 516, 529-30 (8th Cir. 2007); *Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005).

For purposes of its motion for summary judgment, Allina does not dispute that West is a member of a protected class and that he suffered an adverse employment action. Allina argues, however, that West failed to meet his employer's legitimate expectations and that he was treated no differently than similarly situated female nurses. *See Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003); *see also Davis v. KARK-TV, Inc*., 421 F.3d 699, 704 (8th Cir. 2005) (requiring that, in order to make out a prima facie case of discrimination under Title VII, a plaintiff must show that she met the legitimate

expectations of her employer and that similarly situated employees that were not members of the protected class were treated differently than the plaintiff).

West maintains that he was qualified for his position as a nurse and that he met Allina's legitimate expectations of employment. Allina, however, contends that, because it identified deficiencies in West's work performance, and because those deficiencies were communicated to West on a regular basis, West did not meet Allina's legitimate expectations, and he has thus failed to show that he was qualified for the position from which he was discharged. *See Erenberg v. Methodist Hosp.*, 357 F.3d 787, 793 (8th Cir. 2004) (determining that the plaintiff failed to show she was qualified for the position where her employer "identified deficiencies in [her] work performance" and the employer "communicated its findings to [the plaintiff] on a regular basis"). Even assuming, without deciding, that West has met the qualifications prong, *see Grissom v. Arnott,* No. 09–03244, 2012 WL 1309266 at *23 (W.D. Mo. Apr. 16, 2012), the Court concludes that West has failed to allege facts that give rise to an inference of gender discrimination.

West claims that Allina treated similarly situated female nurses differently than Allina treated West. In order to satisfy prong four in this manner, West must show that Allina disciplined female employees differently for the same conduct or offenses. *Chappell v. Bilco Co.*, 675 F.3d 1110, 1118-19 (8th Cir. 2012) (noting that comparators must be "similarly situated in all relevant respects" and that "the relevant respects" refer to "the conduct of the employees and any disparity in their discipline"). The only

individual that West identifies as being similarly situated to him is female nurse, Vicki Shenton.  Notwithstanding that Shenton was involved in an altercation with West, West has failed to point to any evidence that their conduct was substantially similar.  Rather, following the March 2009 incident, Shenton reported that West had clenched his fists and stated: "I'm bringing you down. Next time we talk will be in HR." (Doc. No. 28, Ex. 51.)  Notably, West engaged in a similar incident the following month with another employee, at which time his behavior caused the employee to be fearful "that [West] was going to get [her]" because he was standing over her, visibly shaking. (Doc. No. 28, Ex. 45; Milligan Dep. 80:19-81:19.)  There is no evidence that Shenton engaged in any similar type of threatening or violent conduct or that she (or any other female nurse) was accused of the same offenses and treated more favorably than West.[5]  On the record before the Court, West's assertion of similarity between himself and Shenton fails.

Because West has failed to point to any credible evidence of a causal connection between West's gender and his termination, or that Allina acted adversely on account of his gender, he has failed to show that Allina's acts give rise to an inference of discrimination.  *See Meyer v. ARA Net, Inc.*, Civil No. 07-1168, 2008 WL 2690291 at *2 (D. Minn. July 1, 2008) (citing *Greer v. Emerson Electric Co.,* 185 F.3d 917, 922

---

[5]     While West did accuse Shenton of "trying to intimidate" him, there is no evidence that the allegation was substantiated pursuant to Allina's investigation or that Shenton had a similar history or subsequent incidents of aggressive, angry outbursts.  (*See* Gillette Aff. ¶ 19, Ex. 18.)

(8th Cir. 1999) and *Allen v. Interior Constr. Servs., Ltd.,* 214 F.3d 978, 982 (8th Cir. 2000)).  Thus, West's claims of sex discrimination fail.

Given that West cannot establish a prima facie case of sex discrimination, Allina is entitled to summary judgment in its favor on Counts One and Two.

### B.   Reprisal Discrimination Claims

West also claims that Allina's termination of his employment constituted an act of reprisal in violation of the MHRA.

To establish a prima facie case of reprisal discrimination in violation of the MHRA, West must demonstrate:  (1) that he engaged in protected activity; (2) that Allina took adverse employment action against him; and (3) a causal connection between the protected conduct and the adverse employment action.  *Chivers v. Wal-Mart Stores, Inc.*, 641 F.3d 927, 932 (8th Cir. 2011).

Allina concedes that West's termination constituted an adverse employment action and that West engaged in protected conduct by filing a Charge of Discrimination with the City and State Departments of Human Rights.[6]  Allina argues, however, that West has failed to demonstrate a causal connection between the protected activity and his discharge.  Notably, a delay between the protected conduct and the adverse employment action "dilutes any inference of causation."  *Kipp v. Mo. Highway & Transp. Comm'n*,

---

[6]   West also argues that he engaged in statutorily-protected activity in February 2009 when he reported a colleague for not following Allina policy and saying that she "would not want a male nurse" if she were a 15-year-old toxic shock syndrome patient, which
(Footnote Continued on Next Page)

280 F.3d 893, 897 (8th Cir. 2002) ("Here, the interval of two months between the complaint and Ms. Kipp's termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in Ms. Kipp's favor on the matter of causal link."); *see also Gebreslassie v. Lyngblomsten*, Civil No. 05-326, 2006 WL 1851145, at *8  (D. Minn. July 3, 2006) (noting that, where the plaintiff engaged in insubordinate conduct during a two-month interval between the plaintiff's charge of discrimination and the adverse employment action, any inference of a causal connection was diluted, and concluding that "the fact that the insubordination issues with [the plaintiff] began well before the second charge of discrimination undercut[] any inference of temporal proximity").

Here, West's termination took place more than seven months after he filed his Charge of Discrimination.  (Gillette Aff. ¶ 29, Ex 28.)  The Court concludes that no causal connection exists between West's charges of discrimination and his termination.  Because West cannot establish a causal connection between the protected activity and the adverse employment action, Allina is entitled to summary judgment in its favor on the reprisal discrimination claim (Count Three).

---

(Footnote Continued From Previous Page)
West believed reinforced discriminatory bias against male nurses.  (Gillette Aff. ¶ 13, Ex. 12.)  There is no evidence that reporting such conduct constitutes protected activity.

## CONCLUSION

For the reasons described above, summary judgment is appropriate with respect to Counts One, Two, and Three of the Amended Complaint. Moreover, even if West were able to make out a prima facie case of discrimination, West cannot demonstrate that Allina's non-discriminatory reason for terminating his employment was pretextual. Consequently, the Court grants Allina's motion.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. [25]) is **GRANTED**.

2. Defendant is entitled to judgment with respect to all three counts of Plaintiff's Amended Complaint (Doc. No. [13]).

3. Plaintiff's Amended Complaint (Doc. No. [13]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 30, 2012         s/Donovan W. Frank
                                DONOVAN W. FRANK
                                United States District Judge